# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEREK B. WYNN,                               )<br>                                                             )<br>           Plaintiff,                              )<br>                                                             )<br>v.                                                        )<br>                                                             )<br>CLINTON A. RONCHETTO; KYLE A.    )<br>RINELLA; and KYLE R. MURRAY,       )<br>                                                             )<br>           Defendants.                          ) | Case No. 08-CV-0644-MJR |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Derek Wynn, a resident of the Village of Herrin, Illinois, sued three law enforcement officers on August 11, 2008 in the Circuit Court of Williamson County, Illinois: Clinton Ronchetto, a Herrin police officer, Kyle Rinella, a Williamson County Deputy Sheriff, and Kyle Murray, a police officer from the Village of Energy, Illinois. Wynn alleges that the three engaged in a civil conspiracy to deprive him of his constitutional rights, making them liable under 42 U.S.C. § 1983. He also claims that Rinella and Murray are directly liable under § 1983 for this deprivation and includes in his complaint related tort claims under Illinois law. Ronchetto removed the case to this Court on September 12, 2008. The case was randomly assigned to Chief Judge Herndon, who transferred the case to the undersigned in September 2009.

Each of the defendants, one before transfer and two afterwards, moved that the Court grant partial summary judgment on the federal claims only (Docs. 16, 31, 44). Because there are material issues of fact with respect to the alleged conspiracy between all three defendants, the Court will deny in part the defendants' motions; however, because Wynn has failed to present any evidence that Rinella and Murray, by themselves, acted under color of state law, the Court will grant in part their motions. Also pending is Wynn's motion to strike the affidavit of Chad Parks offered by

Ronchetto (Doc. 28), which the Court will deny as moot.[1]

### I. Applicable Legal Standard

Courts should grant summary judgment to the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c).** The party that moves for summary judgment "bears the initial responsibility of informing a court of the basis for its motion," meaning that it must identify the materials listed in Rule 56(c) that "demonstrate the absence of a genuine issue of material fact." ***Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).** The moving party may do so by "pointing out . . . that there is an absence of evidence to support the non-moving party's case." ***Id.* (quoting *Celotex Corp.*, 477 U.S. at 325).**

Once the moving party satisfies its burden, "the non-moving party must do more than raise a metaphysical doubt as to the material facts" if it wants to defeat summary judgment. ***Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).** Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-moving party cannot rest on the pleadings but must respond, with affidavits or other materials under Rule 56(c), setting forth specific facts that show a genuine issue for trial. **Fed. R. Civ. P. 56(e);** ***Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).** The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).** The non-moving party must also be careful as to what Rule

---

[1] Plaintiff contends the affidavit ought to be stricken since affiant Parks has exercised his Fifth Amendment privilege before both the grand jury and by deposition in the instant case. Since the contents of the affidavit, assuming them to be true, do not impact the Court's decision, the motion to strike is denied as moot. But Parks is unlikely to be permitted to use the Fifth Amendment as a shield on his behalf while supplying arrows to the quiver of Ronchetto, without subjecting himself to the truth seeking process of cross-examination.

56(c) materials it proffers to the Court, as "conclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment." *Haywood v. N. Am. Van Lines, Inc.*, **121 F.3d 1066, 1071 (7th Cir. 1999) (citing** *Darnell v. Target Stores*, **16 F.3d 174, 176–77 (7th Cir. 1994)).** The non-moving party does have one benefit, though, in that the Court must construe the Rule 56(c) materials in the non-moving party's favor, including all reasonable inferences from those materials. *Keri*, **458 F.3d at 628.**

## II.    Factual Background

Viewing the discovery and affidavits presented by the parties in the light most favorable to Wynn, the non-moving party, the Court assumes the following facts for the purpose of deciding the defendants' motions.

Wynn's problems began at a birthday party for Debbie Vigiano at a local bar on August 12, 2007. The birthday party was well attended by law enforcement officers because Vigiano's brother is a retired Herrin police officer. In attendance were the defendants and two others of note: Chad Parks, a Herrin police officer, and Michael Carruthers, a friend of Murray's, neither a party to the suit. Rinella, Murray and Parks were off duty at the time of the party. Ronchetto, who was on duty, arrived at 9 PM, but stayed only five minutes which was long enough to contribute to a gift. He was not present for the next event significant to the story. The rest of the notable parties that were already at the party were intoxicated by the time Wynn arrived.

Wynn and a friend Chris Goodson arrived at the bar around 1 AM. Rinella approached Wynn at the bar, saying that he heard that Wynn had a problem with Parks. An argument ensued, but Parks intervened to break up the altercation. The bar owner overheard during the argument someone exclaim that Wynn previously had made a pass at a wife or girlfriend. Wynn, for his part, acknowledges that he went out with a woman two years ago who was accompanied by Parks's wife.

3

The bar owner asked Wynn to leave; he did. When in the bar parking lot, Wynn was again approached by Rinella. He grabbed Wynn's shirt while Wynn was in his car and tried to turn the car off. Parks again intervened, and Wynn left the bar. He swung around to see if Goodson was outside waiting for a ride, but not seeing him Wynn left for home. A police vehicle approached on the other side of the road, and the car executed a U-Turn and began following Wynn. The vehicle followed Wynn until Wynn arrived in the alley behind Wynn's home around 2:00 am. The car was parked so that it was not visible to the street, being behind Wynn's detached garage. At 2:06 AM, Rinella, Murray and Carruthers attacked Wynn while he was sitting in his car. They struck him in the face, torso, head, back and legs, shattered Wynn's car window, damaged Wynn's car and tore his clothes, after which they fled in a truck.

After the attack, Wynn called the Herrin Police, and identified as his attackers Rinella, Murray, an unknown man and mistakenly thought that Parks attacked him as well. Herrin police informed him that he needed to take his complaint to the Illinois State Police, which he did. The resultant investigation brought criminal charges against Rinella, Murray and Carruthers, who pleaded guilty to the battery of Wynn along with criminal damage to property, mob action and criminal trespass.

Before the attack back at the bar, Rinella, Murray and Carruthers gave Goodson a ride home. During the ride, Rinella asked Goodson the address to Wynn's home. He asked several times, but Goodson refused to disclose the location and was dropped off at his home. After the attack, the three arrived at Vigiano's for an after party. Bystanders heard them exclaim that they had attacked someone.

It turns out that Ronchetto was the one driving the police vehicle that tailed Wynn after the incident at the bar. He ran Wynn's license plates through dispatch at 1:56 AM because, he testified, a headlight was out. Wynn's headlights, though, were not out and were working the next

4

day without Wynn replacing any bulbs. The license check came back as registered to Terri Wynn.[2] The dispatcher did not give Ronchetto the address associated with the license. Ronchetto, though, was present when Wynn pulled behind his garage and radioed as much to dispatch. Right before calling in the license plate, Ronchetto spoke with Parks over the cell phone. He again spoke with Parks by cell phone at 2:01 AM shortly after he finished tailing Wynn. Parks refused to testify on these matters before a grand jury, invoking the Fifth Amendment, but by affidavit in this case swears that the conversation between him and Ronchetto was about the party at Vigiano's.

### III. Analysis

*Direct § 1983 liability*

Rinella and Murray argue that they cannot be held directly liable under § 1983 because there is no evidence that they acted under color of state law when the alleged constitutional deprivation occurred. Wynn, in response, offers evidence that does not bear on this issue, which is why these claims fail on summary judgment.

On direct liability claims under 42 U.S.C. § 1983, the plaintiff's burden is twofold: (1) demonstrate "the deprivation of a right secured by the Constitution or laws of the United States" and (2) demonstrate "that the alleged deprivation was committed by a person acting under the color of state law." **Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009) (citing *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir.2007)).** The defendants focus their attack on the second prong of this burden, which is where the Court will start its analysis. The color of law requirement is an important one for § 1983, as "it sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." *Id.* **at 822–23 (citing *Am. Mfrs. Mut. Ins. Co.***

---

[2] Neither the motions nor the pleadings indicate who Terri Wynn is. Perhaps she is Derek's mother, sister or wife, but to conclude one or the other would be speculation by the Court.

*v. Sullivan*, 526 U.S. 40, 50 (1999); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349–51 (1974)). "Under color of state law" simply means state action, and a state employee acting pursuant to employment is sufficient to convert the individual into a state actor. *See Thomas v. Pearl*, 998 F.2d 447, 450 (7th Cir. 1993) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935–36 & n.18 (1982)). Just because a person is a police officer, however, does not mean that every act of that person, on duty or off, is made under color of law. *See, e.g., Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) ("[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." (internal quotation marks omitted) (alteration in original) (quoting *Briscoe v. LaHue*, 663 F.2d 713, 721 n. 4 (7th Cir.1981), *aff'd*, 460 U.S. 325 (1983))).

The defendants argue that there is a lack of evidence supporting that they acted under color of law. Specifically, both Rinella and Murray were off duty at the time of the birthday party and the subsequent events. Neither wore a police uniform or flashed a badge. Neither asserted police authority over Wynn. Neither told Wynn he was under arrest. In fact, the record is devoid of any indication that these two acted as anything other than private individuals during this unfortunate incident.

The evidence that Wynn offers to defeat summary judgment has serious problems. He points out that Rinella offered a "free pass"—effectively turning a blind eye to any unlawful activity—to Christopher Goodson if Goodson would disclose Wynn's home address. The "free pass," as it relates to Rinella's official duties as a deputy sheriff, would be evidence of acting under color of state law. The problem with this evidence, and Wynn concedes this point, is that Goodson did not tell Rinella Wynn's whereabouts. In other words, Rinella *attempted* to deprive Wynn of his rights under color of law without succeeding. As such, this evidence does not establish an act made under color of law that actually deprived Wynn of his rights and accordingly does not help Wynn's

6

attempt to evade summary judgment.

With respect to Murray, Wynn argues that Murray "abused his position as a police officer by using official information originating with Ronchetto for an unlawful purpose" and that Murray "attempted to interfere with the investigation in official response to Wynn's call for help." He points to no evidence that any of this in fact took place, just that Murray placed phone calls to the investigating officers. His speculation can be ignored. *Cf. Goetzke v. Ferro Corp.*, **208 F.3d 766, 778 (7th Cir. 2002) (noting that inferring a nefarious purpose out of evidence that phone calls were made, and nothing more, is mere speculation).**

Finally, Wynn attempts to merge the conspiracy claim into his argument that Murray and Rinella acted under color of state law because they conspired with a fellow police officer, Ronchetto. Again, Wynn does not show that Murray and Rinella acted as police officers within this conspiracy. The best Wynn does is point to the fact that Murray, Rinella and Ronchetto are all police officers. That is not good enough. Murray and Rinella have to engage in state action. Ronchetto may well have, which will be discussed in the next section, but Wynn has not satisfied his burden with respect to Murray and Rinella.

The fact of the matter is that Wynn has not demonstrated that Murray or Rinella acted as police officers when they allegedly arrived at his house to beat him. None of them flashed a badge. None of them said "You're under arrest!" None of them wore a uniform, drew pistols or showed handcuffs or a warrant. Absolutely nothing indicates that these two acted as police officers when they attacked Wynn. Accordingly, Wynn's direct liability claim against them fails.

*Conspiracy through § 1983*

Along with Ronchetto, Rinella and Murray argue that they cannot be held liable for a § 1983 conspiracy because there is no evidence of an agreement between the three to deprive Wynn of his rights. On the conspiracy claim, unlike the direct claims, Wynn does better.

To prove conspiracy through § 1983, the plaintiff must establish that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Reynolds*, **488 F.3d at 764 (alteration in original) (quoting** *Williams v. Sendiff*, **342 F.3d 774, 785 (7th Cir. 2003)).**

Wynn does not have any direct evidence that the three supposed conspirators reached an understanding, but he does have circumstantial evidence. Ronchetto tailed Wynn and called into dispatch that Wynn had dysfunctional headlights even though, according to Wynn, his headlights were working fine. Additionally, according to radio and cell phone records, Parks called Ronchetto a minute before Ronchetto ran Wynn's license plates through the system, and Wynn's car was hidden from view, meaning that those who attacked him had to know where he lived instead of identifying him based on his vehicle. A conspiracy may be established by circumstantial evidence, but the evidence cannot be speculative. *Id.* **(citing** *Goetzke*, **208 F.3d 766).** *Goetzke* outlined an example of purported circumstantial evidence that was actually speculative: repeated phone calls between alleged conspirators. **280 F.3d at 778.** That sort of evidence only proved that the so-called conspirators remained in contact, not that they were in fact conspirators. *Id.* Unlike the evidence in *Goetzke*, Wynn's evidence is not merely phone calls. Combined with the working headlights, the pieces of evidence provide a pretense through which Ronchetto could have justified tailing and looking up the license plate number of a car otherwise following traffic ordinances, provides the connection of Ronchetto to the other alleged conspirators, and gives the other conspirators the means through which they found Wynn. The evidence goes beyond mere speculation.

Defendants attempt to raise problems relying on Wynn's deposition to defeat summary judgment, but their attempts fail. First, even though it is Wynn's own deposition that is being offered to defeat summary judgment, there is nothing wrong with the nonmoving party's

8

statement as long as it is made on personal knowledge and does not contain conclusory statements, *see Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, **83 F.3d 833, 843 (7th Cir. 1996)**. Wynn's statement is on personal knowledge and is not conclusory. Additionally, the defendants' argument that there is more evidence supporting functional headlights (from Ronchetto and the statements of others) does not matter. The mere fact that there are more sources of evidence on the record pointing to dysfunctional headlights does not mean that, at summary judgment, the Court is supposed to conclude that the headlights were dysfunctional. Similarly, the Court cannot conclude that Ronchetto and Parks in fact had a conversation about Vigiano's party when evidence suggests an alternate possibility. That would be assigning weight and credibility to the evidence, which is something that the Court cannot do on a simple motion for summary judgment. Weighing the evidence and assigning credibility is for a trial on the merits, and in any event, due to the demand in this case, the trial on the merits is by a jury, not the Court.

## IV.     Conclusion

Wynn successfully raises an issue of fact regarding the existence of a § 1983 conspiracy, so the Court **DENIES** Ronchetto's motion for summary judgment on Count I (Doc. 16). The Court, however, **GRANTS IN PART AND DENIES IN PART** Rinella and Murray's motions (Docs. 31, 44). For the same reason that the Court denies Ronchetto's motion, Rinella and Murray's motions are denied to the extent that they seek judgment on Count I. However, because no evidence exists on the record that Rinella and Murray acted individually under color of state law, they are entitled to summary judgment on the direct liability claims (Counts II and III) alleging violation of 42 U.S.C. § 1983, and the motion is granted to that extent. Finally, because Wynn's motion to strike the affidavit of Chad Parks relates to a motion that the Court denied, the Court **DENIES** Wynn's motion to strike **AS MOOT** (Doc. 28).

After this decision, the following claims remain viable:

  a) Count I against Rinella, Murray and Ronchetto based upon 42 U.S.C. § 1983 alleging civil conspiracy;

  b) Count IV against Rinella alleging Illinois common-law battery; and

  c) Count V against Murray alleging Illinois common-law battery.

**IT IS SO ORDERED.**

**DATED January 21, 2010.**

            **s/ Michael J. Reagan**
            **MICHAEL J. REAGAN**
            **United States District Judge**